LESTER W. TRIPP AND BETTY B. TRIPP v. DAVID FLAHERTY, SECRETARY OF THE DEPARTMENT OF HUMAN RESOURCES, AND ANNIE LAURIE BURTON, DIRECTOR OF ALAMANCE COUNTY DEPARTMENT OF SOCIAL SERVICES

No. 7515SC263

(Filed 15 October 1975)

1. Rules of Civil Procedure § 56— summary judgment — genuine issue of fact — recital in judgment

There is no requirement in G.S. 1A-1, Rule 56 that a summary judgment, to be valid, must contain an express determination that there is no genuine issue as to any material fact.

2. Constitutional Law § 13— rest home — regulation prohibiting sleeping in attic — constitutionality — insufficient evidence for summary judgment

In an action seeking a writ of mandamus commanding defendants to issue plaintiffs a license to operate a rest home, or in the alternative, seeking the court to declare the statute giving defendants the power to withhold licenses void as violative of the N. C. Constitution, evidence before the trial court was not sufficient to show that defendants were entitled to summary judgment as a matter of law where such evidence tended to show that licensing standards adopted by the Social Services Commission required that the attic of a home housing 2-5 persons not be used for storage or sleeping, plaintiffs' three daughters slept in the attic of their home, and there was no evidence that use of an attic of a one-story house for storage or as sleeping quarters for others than aged or infirm persons increases the hazard or in any way appreciably affects the safety of occupants of the ground floor.

APPEAL by plaintiff from *McLelland, Judge.* Judgment entered 7 November 1974 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 29 May 1975.

Plaintiffs own and manage a family care home known as "Tripp's Rest Home" and have been doing so for approximately eight years. The rest home has been operating without the requisite license provided for by G.S. 108-77.

Defendants informed plaintiffs that if the rest home were not closed and the patients relocated, they would commence criminal proceedings against them. Plaintiffs, alleging they have complied with all valid requirements for a license, instituted this action seeking a writ of mandamus commanding the defendants to issue them a license to operate a rest home or, in the alternative, that the court declare the statute giving defendants the power to withhold licenses to be void as violative of the North Carolina Constitution.

Defendants filed answers denying that plaintiffs have complied with all valid requirements for license. Thereafter, defendant Flaherty, Secretary of the Department of Human Resources, filed a motion for summary judgment. The court allowed the motion and dismissed the plaintiffs' action with prejudice. From this judgment plaintiffs appealed.

*Harris & McEntire by W. S. Harris, Jr., for plaintiff appellants.*

*Attorney General Edmisten by Assistant Attorney General William Woodward Webb for defendant appellee, David Flaherty, Secretary of the Department of Human Resources.*

*Donnell S. Kelley for defendant appellee, Annie Laurie Burton, Director of Alamance County Department of Social Services.*

PARKER, Judge.

[1] Appellant's first contention is that the judgment appealed from is fatally defective because it does not contain an express determination that there is no genuine issue as to any material fact. Summary judgment under G.S. 1A-1, Rule 56 may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." However, there is no requirement in Rule 56 that the summary judgment, to be valid, must contain "the ritual statement that there is no genuine issue as to any material fact."

*Fromberg, Inc. v. Gross Manufacturing Company,* 328 F. 2d 803, 806 (9th Cir. 1964). Rendering the judgment in itself clearly implies such a determination. Articulation of that determination in the judgment, though desirable, is not essential. Validity of the judgment does not depend upon the form in which the determination is made, whether express or implied, but upon the correctness of the determination. Accordingly, we move to the real questions presented by this appeal, which are (1) whether the record shows that there is no genuine issue as to any material fact and (2) whether defendants are entitled to judgment as a matter of law.

G.S. 143B-137 makes it the duty of the Department of Human Resources "to provide the necessary management, development of policy, and establishment and enforcement of standards for the provision of services in the fields of general and mental health and rehabilitation with the basic goal being to assist all citizens . . . to achieve and maintain an adequate level of health, social and economic well-being, and dignity." G.S. 143B-153 provides for the creation of the Social Services Commission of the Department of Human Resources and vests the Commission "with the power and duty to adopt rules and regulations to be followed in the conduct of the State's social service programs." More particularly, G.S. 143B-153(3)b provides that "[t]he Social Services Commission shall have the power and duty to establish and adopt standards . . . [f]or the inspection and licensing of all boarding homes, rest homes, and convalescent homes for aged or infirm persons as provided by G.S. 108-77." Insofar as pertinent to this appeal, G.S. 108-77 provides as follows:

> "§ 108-77. *Licensing of homes for the aged and infirm.* —(a) The Department of Human Resources shall inspect and license, under the rules and regulations adopted by the Social Services Commission, all boarding homes, rest homes, and convalescent homes for persons who are aged or are mentally or physically infirm, except those exempted under subsection (c) below. [The exceptions listed under subsection (c) are not pertinent to this appeal.] Licenses issued under the authority of this section shall be valid for one year from the date of issuance unless revoked for cause earlier by the Secretary of Human Resources.

"(b) Any individual or corporation that shall operate a facility subject to license under this section without such license shall be guilty of a misdemeanor."

Acting pursuant to its statutory authority and duty to adopt rules and regulations and to establish standards for licensing of boarding homes, rest homes, and convalescent homes for aged or infirm persons, the Social Services Commission (then the State Board of Social Services) adopted under date 1 January 1971 "Minimum and Desired Standards and Regulations" for "Family Care Homes" having a capacity to care for from two to five persons. The Standards adopted relate to such matters as management of the home, the personnel to be employed therein, the type of services to be rendered, and the physical construction of the home itself. Section III C of the Standards deals with the location, construction, and physical facilities of the home. Included are requirements that the home may be "[o]nly one story in height" (Sec. III C.2.b.) and that the attic "[c]annot be used for storage or sleeping." (Sec. III C.2.e.). It is this last requirement which gives rise to the present litigation.

Defendant Flaherty's motion for summary judgment states that the reason for the denial of a license to plaintiffs was their failure to comply with Section III C.2.b. and e. of the Standards. Nothing in the record indicates that plaintiffs have failed to comply in any other respect. The affidavit of the plaintiff, Betty B. Tripp, filed in opposition to defendants' motion for summary judgment, states that she operates the home in her residence, that she was contacted by a representative of the Department of Social Services and advised that she must secure a license, that she was informed "that she and her home met all of the minimum standards except the regulation which prohibited the use of the attic for storage or sleeping and that it would be necessary for her to find other sleeping accommodations for her three daughters and to seal off the attic before her home could be licensed as a family care facility for 2-5 persons." In her affidavit Mrs. Tripp details the reasons she could not comply and still remain in business, and she states that on a subsequent application for a license "it was determined that she met all standards except that she still had her three daughters sleeping in the attic." Defendants presented nothing to challenge these allegations. Thus, the record discloses there is no genuine issue that plaintiffs are in compli-

ance with all standards provided for the licensing of a family care home except the requirement that the attic of their home "[c]annot be used for storage or sleeping." There is no suggestion that the attic is being used for storage, but by plaintiffs' own admission it is being used, not as a sleeping place for any aged or infirm person, but to provide sleeping quarters for plaintiffs' three daughters. The question presented by this appeal is thus narrowed to whether, on the foregoing facts as to which there is no genuine issue, defendants were entitled as a matter of law to summary judgment dismissing plaintiffs' action. The answer to this question in turn depends upon the validity of the requirements in Section III C.2.b. and e. of the licensing standards.

In the statutes relating to the licensing of homes for the aged and infirm the General Assembly has declared the public policy to be effectuated, established the legal framework within which that policy is to be accomplished, and fixed adequate standards for guidance of the administrative agency involved. Decisions of our Supreme Court establish the principle that although the General Assembly may not delegate its authority to make laws, it may delegate to an administrative agency the authority to make determinations of fact upon which the application of a statute to particular situations will depend, provided the General Assembly has itself declared the policy to be effectuated, has established the broad framework of law within which that policy is to be accomplished, and has fixed adequate standards for guidance of the administrative agency. See *Foster v. Medical Care Comm.*, 283 N.C. 110, 195 S.E. 2d 517 (1973); *Coastal Highway v. Turnpike Authority*, 237 N.C. 52, 74 S.E. 2d 310 (1953). Accordingly, we find no unconstitutional delegation of legislative power involved in the present case. That is not to say, however, that all of the licensing standards established by the Social Services Commission are valid. Clearly, the Commission lacks power to establish a standard which, if adopted by the Legislature, would be unconstitutional. This is what plaintiffs contend has occurred in the present case.

[2]   Plaintiffs recognize that the State in exercise of its police power may properly impose minimum standards on family care homes in order to protect the health and safety of the aged or infirm persons residing therein. Their contention is that the regulation which prohibits use of the attic of their home as sleeping quarters for their children bears no reasonable relationship to the public good sought to be attained. In this con-

nection plaintiffs point particularly to the precautions they have taken, as disclosed in their affidavits filed in opposition to the motion for summary judgment, to safeguard their home against fire. The question involved, however, is not whether plaintiffs' home is or is not in fact safe for first floor occupancy by elderly or infirm residents despite the fact that it does not meet minimum standards for licensing because of the violation of the prohibition of use of the attic for storage or sleeping. Rather, the question is whether that prohibition, as applied to family care homes in general, bears a reasonable relationship to the legitimate State objective of promoting the safety and welfare of the aged or infirm. For a decision of this question we find the present record inadequate. Nothing in the material filed in support of or in opposition to the motion for summary judgment furnishes any basis for deciding that use of an attic of a one-story house for storage or as sleeping quarters for others than aged or infirm persons increase the hazard or in any way appreciably affects the safety of occupants of the ground floor. It may be that such use of the attic does affect the fire hazard to the entire structure and thereby increases the hazard to the first floor occupants, but nothing in the present record supports such a conclusion. We hold that summary disposition of the question presented was not appropriate on the record as presently constituted and that the material before the court was not sufficient to show that defendants were entitled to summary judgment as a matter of law.

Upon a further hearing before the trial court, the parties may present evidence to assist the court in determining whether the licensing standards here involved do, or do not, reasonably relate to the legitimate public purpose of promoting the health and safety of the aged or infirm.

We note that after this appeal was argued in this Court, the General Assembly enacted Chapter 729 of the 1975 Session Laws which amended G.S. 108-77. However, we express no opinion as to the effect of that amendment upon the ultimate disposition of the present case.

For the reasons above noted, the summary judgment appealed from is reversed and this cause is remanded to the trial court for further proceedings.

Reversed and remanded.

Judges BRITT and VAUGHN concur.